ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 15 2009
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | |
|---|---|
| ANNE MARIE LITSON-GRUENBERG, Individually And On Behalf Of All Others Similarly Situated, § § § § Plaintiff, § § vs. § JPMorgan Chase & Co. § § Defendant § | Case No.: _____ 7-09CV-056-O |

## COMPLAINT – CLASS ACTION

ANNE MARIE LITSON-GRUENBERG, individually and on behalf of all others similarly situated, Plaintiff, files this complaint against JPMorgan Chase & Co., Defendant. Plaintiff alleges:

### NATURE OF THE ACTION

1.  This is a class action suit arising out of Defendant's breach of its statutory duties in relation to the perpetrating of a fraudulent "Ponzi" scheme by third parties using Defendant's services and facilities. This scheme was brought to the attention of the authorities, and is now the subject of a complaint filed in this Court by the Securities and Exchange Commission in *Securities and Exchange Commission v. Millennium Bank et al*, case number 7:09-CV-00050-O.

2.  Plaintiff's complaint is not against the defendants in case number 7:09-CV-00050-O, but rather against Washington Mutual, now known as JPMorgan Chase, the bank which not only turned a blind eye to the obviously illegal activities being carried out with its complicity and facilitation, but even profited from those activities.

3. Plaintiff is not naming any of the defendants, relief defendants, or other parties to case number 7:09-CV-00050-O. This Court has specifically enjoined private actions against those parties. It is not Plaintiff's intention to violate that or any other Order of this Court.

## JURISDICTION AND VENUE

4. The claims asserted herein arise under and pursuant to Title 12 of the United States Code sections 1813, 1815, 1817, 1818, 1819, 1881-1883, Title 31 of the United States Code sections 5311-5332, and regulations promulgated thereunder.

5. This Court has jurisdiction over the subject matter of this suit pursuant to Title 28 of the United States Code sections 1331 and 1332.

6. Venue is proper in this district pursuant to this Court's March 25, 2009 Order in case number 7:09-CV-00050-O in which all actions arising out of these facts were enjoined "except in this Court." Furthermore, venue is proper because certain of the acts, practices, transactions, and courses of business occurred in the Northern District of Texas.

7. In connection with the acts alleged in this complaint, Defendant, either directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the mails, interstate telephone lines, and the national banking system.

## PARTIES

8. Plaintiff, Anne Marie Litson-Gruenberg, is an individual that is a citizen of the State of Texas.

9. Defendant, JPMorgan Chase & Co., is a corporation that is incorporated under the laws of the State of Delaware. Defendant has its principal place of business in the State

of New York. Defendant does business in Texas and may be served with process by serving its registered agent, C T Corporation System, at 350 North St. Paul St., Dallas, TX, 75201.

## CLASS ACTION ALLEGATIONS

10. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all those who invested in the Ponzi scheme which is the subject of *Securities and Exchange Commission v. Millennium Bank et al*, case number 7:09-CV-00050-O, currently pending before this Court, and who were damaged thereby.

11. Excluded from the Class are:

    (a) the Defendants in *Securities and Exchange Commission v. Millennium Bank et al*, case number 7:09-CV-00050-O;

    (b) the Defendant in this case;

    (c) the officers and directors of any institutional defendant in either case;

    (d) the members of the immediate families of any other excluded persons, and their legal representatives, heirs, successors or assigns; and

    (e) any entity in which any defendants in either case have or had a controlling interest.

12. The members of the Class are so numerous that joinder of all members is impractical. According to the filings of the SEC in case number 7:09-CV-00050-O, at least 375 individuals invested in the subject scheme. The exact number and actual identity of members of the Class can only be determined through appropriate discovery.

Members may be notified of the pendency of this action via US mail using the form of notice customary to such class actions.

13. Plaintiff's claims are typical of the claims of all members of the Class as all members are similarly affected by Defendant's negligent conduct that is complained of herein.

14. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in complex and multi-party litigation.

15. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class.

16. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of individual members is impractical. Furthermore, the grossly unequal positions of the Defendant and the individual class members may make it impossible for the individual class members to separately redress the wrongs done them. There will be no difficulty in the management of this action as a class action.

## CONDITIONS PRECEDENT

17. All conditions precedent have been performed or have occurred.

## FACTS

18. In July of 2004, Kristi Hoegel and Jackie Hoegel established a bank account at a Washington Mutual branch in Las Vegas, Nevada. This account was established in the name of UT of S, LLC, a Nevada company that was formed at approximately the same time. UT of S has been under the control of Krisi and Jackie Hoegel as well as William Wise since its inception.

19. Kristi Hoegel, one of the individuals who opened the account, and William Wise, one of the individuals who was in control of UT of S, LLC, have both been convicted of securities laws violations in various states prior to the forming of UT of S.

20. Defendant did no background check, due diligence, or other investigation regarding Ms. Hoegel or Mr. Wise. Though these individuals have been the signatories on a multi-million dollar account for nearly 5 years, Defendant either did not know or did not care that they were known perpetrators of securities frauds.

21. The principle place of business of UT of S is Napa, California. Napa, California is in a "High Intensity Financial Crime area" as defined and designated pursuant to the Money Laundering and Financial Crimes Strategy Act of 1998.

22. UT of S was a domestic affiliate of Millennium Bank, a bank licensed in St. Vincent and the Grenadines. St. Vincent and the Grenadines is a country on the Financial Action Task Force list of non-cooperative countries and territories.[1]

23. Defendant did not perform any due diligence regarding UT of S, LLC. UT of S, LLC orchestrated the deposit of tens of millions of dollars into Washington Mutual and its successor JPMorgan Chase through its affiliation with a "bank" in a country known not to cooperate with international money laundering enforcement. UT of S was located in a geographic area designated by the United States government as a "High Intensity Financial Crime area". Nonetheless, Defendant was content to look the other way while hundreds of Americans were bilked out of millions of dollars.

---

[1] The **Financial Action Task Force on Money Laundering** (FATF), also known by its French name *Groupe d'action financière sur le blanchiment de capitaux* (GAFI), is an inter-governmental body founded in 1989 by the G7. The purpose of the FATF is to develop policies to combat money laundering and terrorist financing.

24. Defendant accepted deposits into the account in issue from an entity located in an off-shore money laundering haven and a domestic financial crime hot-bed. The account maintained and overseen by Defendant was held by known violators of the securities laws, and received more than $68 million in less than five years. Many of these deposits were by checks made payable to "United Trust of Switzerland SA."

25. Defendant never bothered to investigate this "United Trust of Switzerland." United Trust of Switzerland is not a licensed bank or securities dealer in the United States, Switzerland, or anywhere else. This is a fact that could be easily checked by Defendant in just a few moments time. Defendant however decided to remain blissfully ignorant of the blatant fraud it was facilitating.

26. Many of these checks Defendant deposited into the UT of S account referenced "CD" or interests rates ranging from 6.75% to 10%. It is clear from even a cursory review of these documents that UT of S was running a "bank within a bank" at Washington Mutual and JPMorgan Chase. These licensed banks chose however not to do any investigation of the scheme from which they were profiting at the expense of individuals like Plaintiff Anne Litson-Gruenberg.

27. Plaintiff is a widow. As her husband's life drew to an end, he took their entire life savings, $250,000, and purchased a CD to draw interest on which his wife could live after his passing. Plaintiff's late husband was not a sophisticated investor, but rather a simple retiree. When this working man saw an advertisement for a CD offering an 8.5% interest rate with a company that claimed ties to the Swiss banking community, he did his homework. Mr. Gruenberg asked Millennium Bank for references, who he called. These

individuals, either earlier unwitting victims of the Ponzi scheme, or con-men associated with UT of S, convinced Mr. Gruenberg that his investment was safe.

28.     After calling the individual references provided by Millinium Bank, Mr. Gruenberg and his wife, the Plaintiff, arranged a wire transfer to Washington Mutual in the amount of $250,000. Washington Mutual took that money and placed it in the account of UT of S without ever asking a single question of anyone. Unlike Mr. Gruenberg, Defendant never attempted to do any homework at all. Rather than asking the questions which could have saved so many unwitting investors from this scheme, Defendant profited from the fraud and continued to assist UT of S.

29.     Defendant was continuing to accept such deposits, and make transfers of funds to the individual accounts of known violators of securities laws, until the entire Ponzi scheme was halted by Order of this Court issued March 25, 2009.

## CLAIMS

### First Claim

**Defendant's Failure to Establish BSA/AML Compliance Procedures**

30.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

31.     Defendant bank failed to ensure compliance with, and/or violated the provisions of, Title 12 of the United States Code sections 1813, 1815, 1817, 1818, 1819, 1881-1883, Title 31 of the United States Code sections 5311-5332, and regulations promulgated thereunder by failing to adopt and maintain an adequate Band Secrecy Act/Anti-Money Laundering compliance program.

32. Defendant bank was required to adopt and maintain a program to ensure compliance with banking secrecy and anti-money-laundering laws and regulations. Said program was required to be written, approved by the bank's board of directors, and noted in the minutes. Defendant bank was required to provide for the ongoing administration of said program and properly train personnel in compliance.

33. Defendant bank failed to meet these requirements in that the required program was either nonexistent or inadequate, appropriate personnel were not adequately trained in compliance if they were trained at all, and said program was not fully and adequately implemented and enforced.

34. By virtue of the forgoing, Defendant violated Federal law including but not limited to 12 CFR 326 et seq.

35. Defendant's violation of these laws was a direct and proximate cause of the harm suffered by Plaintiff and all other Class members.

## Second Claim

### Defendant's Failure to Implement a Customer Identification Program

36. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

37. Defendant bank failed to ensure compliance with, and/or violated the provisions of, Title 12 of the United States Code sections 1813, 1815, 1817, 1818, 1819, 1881-1883, Title 31 of the United States Code sections 5311-5332, and regulations promulgated thereunder by failing to adopt and maintain an adequate Customer Identification Program.

38.     Defendant bank was required to adopt and maintain a Customer Identification Program appropriate for its size and type of business. Defendant was required to perform a risk assessment of its customers and product offerings and include reasonable and practical risk-based procedures for verifying the identity of its customers.

39.     Defendant bank failed to meet these requirements in that the required program was either nonexistent or inadequate, appropriate personnel were not adequately trained in compliance if they were trained at all, and said program was not fully and adequately implemented and enforced.

40.     Defendant bank further failed to adequately comply with proper Customer Identification procedures with respect to the account held by UT of S, LLC. An adequate and proper Customer Identification process with respect to this account would have revealed to Defendant bank that it was maintaining an account on behalf of two individuals with a documented history of violating the securities laws.

41.     By virtue of the forgoing, Defendant violated Federal law including but not limited to 12 CFR 326 et seq.

42.     Defendant's violation of these laws was a direct and proximate cause of the harm suffered by Plaintiff and all other Class members.

### Third Claim

### Defendant's Failure to Perform Due Diligence

43.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

44.     Defendant bank failed to ensure compliance with, and/or violated the provisions of, Title 12 of the United States Code sections 1813, 1815, 1817, 1818, 1819, 1881-1883,

Title 31 of the United States Code sections 5311-5332, and regulations promulgated thereunder by failing to perform Customer Due Diligence with regard to the account held by UT of S, LLC.

45.     Defendant bank was required to perform Customer Due Diligence ("CDD") with regard to its customers, specifically UT of S, LLC.  Appropriate CDD allows a bank to predict the types of transactions in which UT of S is likely to engage.  These procedures are designed to assist the bank in determining which transactions are suspicious and require reporting to the appropriate authorities.

46.     In addition to standard Customer Due Diligence, Defendant bank was required to perform Enhanced Due Diligence on UT of S, LLC.  Enhanced Due Diligence is required for customers that are high risk.  When determining the risk profile of UT of S, LLC, Defendant bank was required to consider that the primary offices of UT of S, LLC are located in a High Intensity Financial Crime area as defined and designated pursuant to Money Laundering and Financial Crimes Strategy Act of 1998.  Defendant bank was also required to consider UT of S, LLC's strong ties to St. Vincent and the Grenadines, a country on the Financial Action Task Force list of non-cooperative countries and territories.  These facts, along with the records of securities violations of the principles of UT of S, LLC, required Enhanced Due Diligence on the part of Defendant bank with respect to UT of S, LLC.

47.     Defendant bank's Customer Due Diligence and Enhanced Due Diligence with regard to UT of S, LLC was woefully lacking.  Said program was either nonexistent or inadequate, appropriate personnel were not adequately trained in CDD if they were trained at all, and said program was not fully and adequately implemented and enforced.

48.     Adequate and proper Customer Due Diligence and Enhanced Due Diligence would have revealed to Defendant bank that the transactions it was carrying out on behalf of UT of S, LLC were suspicious and required reporting to the appropriate authorities.

49.     By virtue of the forgoing, Defendant violated Federal law including but not limited to 12 CFR 326 et seq.

50.     Defendant's violation of these laws was a direct and proximate cause of the harm suffered by Plaintiff and all other Class members.

### Fourth Claim

### Defendant's Failure to Report Suspicious Activities

51.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

52.     Defendant bank failed to ensure compliance with, and/or violated the provisions of, Title 12 of the United States Code sections 1813, 1815, 1817, 1818, 1819, 1881-1883, Title 31 of the United States Code sections 5311-5332, and regulations promulgated thereunder by failing to timely and adequately report suspicious activities to the appropriate authorities.

53.     Defendant bank was required to report suspicious activities to the Financial Crimes Enforcement Network and other governmental and law enforcement agencies. These reporting requirements are triggered with regard to transactions about which Defendant knows or suspects criminal activities, or which have no apparent business or lawful purpose, or which are not the type in which the particular customer would be expected to engage.

54.     With regard to the UT of S, LLC, account, Defendant bank accepted deposits in excess of $68 million in less than 5 years. Most, if not all, of these deposits were for hundreds of thousands of dollars. These were highly suspicious transactions which Defendant should have reported.

55.     By way of example, Plaintiff made a one-time transfer of $250,000 to the UT of S account maintained by Defendant bank. The hundreds or even thousands of other victims made similar deposits, either by wire transfer or mailed check. Each of these deposits individually triggered Defendant's legal duty to report suspicious activity.

56.     In addition to the deposits being received by Defendant bank into the UT of S account, there were also transfers out of the account in excess of $14 million over the same less-than-5-year span to individuals known to have violated the securities laws in the past. These transfers as well were highly suspicious. Each of these transfers also triggered Defendant's legal duty to report suspicious activities.

57.     Defendant bank's Suspicious Activity Reporting ("SAR") with regard to UT of S, LLC was wholly insufficient. Said program was either nonexistent or inadequate, appropriate personnel were not adequately trained in SAR if they were trained at all, and said program was not fully and adequately implemented and enforced.

58.     Adequate and proper SAR would have resulted in hundreds if not thousands of reports regarding the UT of S account being filed with the Financial Crimes Enforcement Network and other governmental and law enforcement agencies.

59.     By virtue of the forgoing, Defendant violated Federal law including but not limited to 12 CFR 326 et seq.

60.   Defendant's violation of these laws was a direct and proximate cause of the harm suffered by Plaintiff and all other Class members.

### Exemplary Damages

61.   Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

62.   Defendant bank failed to ensure compliance with, and/or violated the provisions of, Title 12 of the United States Code sections 1813, 1815, 1817, 1818, 1819, 1881-1883, Title 31 of the United States Code sections 5311-5332, and regulations promulgated thereunder. Each of these statutes and regulations, both singularly and collectively, defines a standard of care with which Defendant had a duty to comply. Defendant's conduct in breaching that duty rises beyond ordinary negligence to a level which supports the awarding of exemplary damages.

63.   Defendant's conduct, when viewed objectively from Defendant's standpoint at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights or welfare of others.

## Prayer

Wherefore, Plaintiff prays that Defendant be cited to appear and answer, and for relief and judgment as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff, and certifying Plaintiff as Class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and other Class members for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, and interest thereon;

(c) Awarding exemplary damages against Defendant in an amount sufficient to deter future conduct by this Defendant;

(d) Awarding Plaintiff and the Class the reasonable costs and expenses incurred in the prosecution of this action, including counsel fees and expert fees; and

(e) Such other and further relief, both at law and in equity to which Plaintiff and the Class may show themselves justly entitled.

## Jury Demand

Plaintiff, Anne Marie Litson-Gruenberg, individually and behalf of all those similarly situated, asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

Respectfully submitted,

MEYERSON CAGLE, P.C.



JEFF M. MEYERSON
State Bar No. 00788051
jeffm@meyersonfirm.com
Application for Admission to Northern District Pending

CHRIS CAGLE
State Bar No. 24048905
chrisc@meyersonfirm.com
Application for Admission to Northern District Pending

ALEX METCALF
State Bar No. 24058000
alexm@meyersonfirm.com
Application for Admission to Northern District Pending

Terrace II
2700 Via Fortuna Dr.
Suite 145
Austin, Texas 78746
Telephone (512) 330-9001
Facsimile  (512) 330-9005

ATTORNEYS FOR PLAINTIFFS

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

7-09 CV-056-O

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Anne Marie Litson-Gruenberg

## DEFENDANTS
JPMorgan Chase & Co.

**(b)** County of Residence of First Listed Plaintiff: **Williamson**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **New York**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jeff Meyerson, Chris Cagle, Alex Metcalf; Meyerson Cagle, PC; Terrace II, 2700 Via Fortuna Dr, Ste 145, Austin, TX 78746; 512-330-9001

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☒ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
12 USC 1813, 1815, 1817, 1818, 1819, 1881-1883, 31 USC 5311-5332
Brief description of cause:
Defendant bank breached its duties to do due diligence and report suspicious transactions.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE O'Connor
DOCKET NUMBER 7:09-CV-00050-O

DATE: 4/14/09
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____